| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Charles Siegal | | David McMahon |
| Leo Goldbard | | Peter Felsenfeld |

**Proceedings:** **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** (filed 04/14/11)

## I. INTRODUCTION

On January 27, 2011, plaintiff Ameron International Corporation filed the instant action against defendant American Home Assurance Company in the Los Angeles County Superior Court alleging claims for declaratory relief and breach of contract. Plaintiff seeks a determination that defendant's insurance policies provide defense coverage for an action pending against plaintiff in Hawaii. On February 23, 2011, defendant removed the action to this Court on the basis of diversity jurisdiction.

On April 14, 2011, plaintiff filed the instant motion for partial summary judgment. On May 16, 2011, defendant filed an opposition to plaintiff's motion. Plaintiff replied on May 23, 2011. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

On June 1, 2004 and June 1, 2005, defendant issued commercial general liability insurance policies, numbers GL 360-23-12 and GL 643-17-25, respectively ("the policies"), to plaintiff. Defendant's Statement of Uncontroverted Facts ("DSUF") ¶¶ 2–3. The policies provide that defendant will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury or property damage,'" including loss of use of property, that is "caused by an 'occurrence' that takes place in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

'coverage territory.'" DSUF ¶ 4. The policies further provide that defendant has the right and duty to defend plaintiff against "any suit seeking those damages." DSUF ¶ 4.

"Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." DSUF ¶ 5. The term "accident" is not defined in the policies. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically insured," deemed to have occurred at the time of the "occurrence" that caused it. DSUF ¶ 6. The policies define "coverage territory" for present purposes as the United States. DSUF ¶ 7. The policies provide coverage for "property damage" or "bodily injury" occurring from June 1, 2004 to June 1, 2006. DSUF ¶ 8.

The policies do not explicitly specify a place of performance. DSUF ¶ 9. Plaintiff, a company headquartered and with its principal place of business in California, purchased the policies through the Los Angeles, California office of Aon Risk Services. Plaintiff's Statement of Uncontroverted Facts ("PSUF") ¶ 10. Defendant has its principal place of business in New York. DSUF ¶ 10. The policies include one amendatory endorsement, which was accepted in California and applies to the policy as a whole. PSUF ¶ 14. All required premiums have been paid with respect to the policies, and all conditions and covenants required to be performed by plaintiff under the policies have been performed. PSUF ¶¶ 16–17.

On April 13, 2010, Brown's Trucking, Inc. ("Brown") filed a complaint ("the Brown Complaint") against plaintiff in Hawaii state court in the matter of <u>Brown's Trucking, Inc. v. Ameron Int'l Corp., et al.</u>, CV 10-1-0245 ("the Brown action"). DSUF ¶ 18. The Brown Complaint alleges that Brown was hired as the general contractor on the State of Hawaii Department of Transportation project described as "Kamehameha V Highway Emergency Replacement of Kawaikapu Bridge, District of Molokai, Island of Molokai, Federal Aid Project No. ER-12(4)" (the "Project"). DSUF ¶ 19. The Brown Complaint further alleges that Brown contracted with plaintiff to supply concrete for the Project, including concrete for the construction of drilled shafts. DSUF ¶ 20. The Brown Complaint alleges that the concrete provided by plaintiff was substandard and resulted in the failure of drill shafts, causing delays and the filing of a lawsuit against Brown by the subcontractor responsible for installing the damaged drilled shafts. PSUF ¶ 21. Based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

those facts, the Brown Complaint alleges causes of action against plaintiff for (1) breach of contract, (2) quantum meruit, (3) negligence, (4) negligent interference with contract, (5) equitable indemnity, and (6) contribution. DSUF ¶ 22.

By letter dated April 30, 2010, plaintiff tendered the Brown action to defendant for coverage and a defense. DSUF ¶ 23. On November 15, 2010, Chartis Claims, Inc. ("Chartis"), the claims administrator for defendant, informed plaintiff by letter that "there is no coverage under the policies for the claims presented" based on the allegations in the Brown Complaint. DSUF ¶ 24. The letter stated that Brown's claims did not allege an "occurrence" as defined in the policies because "Hawaii courts have consistently held that commercial general liability coverage is not available for contract and contract-based tort claims under Hawaii law." Declaration of Charles D. Siegal ("Siegal Decl."), Exh. C. at 77. Plaintiff requested additional explanation of defendant's denial of coverage by letter on November 19, 2010, to which Chartis responded on December 10, 2010. DSUF ¶¶ 26–27. Defendant continues to refuse to provide plaintiff with coverage and a defense to the Brown action. DSUF ¶ 28.

Plaintiff seeks a declaration that defendant owes it a duty to defend the Brown action and to reimburse it for the cost of defending the lawsuit thus far. Mot. at 1.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV. DISCUSSION**

**A. Choice of Law**

At the outset, the parties dispute whether California or Hawaii law controls the present dispute. See Mot. at 11–17; Opp'n at 1–9; Reply at 1–11. This inquiry is significant because, as discussed in more detail below, the allegations in the Brown Complaint trigger defendant's duty to defend the Brown action under California law, but may not under Hawaii law.

Because this lawsuit has been brought in California, the Court must apply California choice of law principles in determining the appropriate substantive law to apply to this dispute. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010) ("A federal court sitting in diversity applies the forum state's choice of law rules."). In contract cases, California has two different choice of law tests: California Civil Code section 1646, which governs the interpretation of contracts, and the "governmental interest" test. The parties disagree as to which choice of law rule the Court should apply. Plaintiff argues that the policies fall within the scope of California Civil Code section 1646, because the question of whether the allegations in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

CIVIL MINUTES - GENERAL

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

the Brown Complaint constitute an "occurrence" within the meaning of the policies is one of contract interpretation. Mot. at 12–14; Reply at 2–3 (citing Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1459–60 (2007)). Defendant counters that determining whether plaintiff is entitled to a defense in the Brown action involves the applicability and enforceability of an express contractual promise, rather than an interpretation of the policies. Opp'n at 1–2. Therefore, defendant maintains that California's common law governmental interest analysis applies. Id. The Court need not decide this dispute because under either section 1646 or the governmental interest analysis, California law governs.[1]

### 1. California Civil Code Section 1646

California Civil Code section 1646 provides a choice of law rule regarding the interpretation of contracts. That statute provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. The California Court of Appeal has determined that "[a] contract 'indicates a place of performance' within the meaning of section 1646 if the

---

[1] Section 1646 determines the law governing the interpretation of a contract, irrespective of the application of the governmental interest analysis to other choice of law issues. See Frontier Oil, 153 Cal. App. 4th at 1459–60. As such, section 1646 governs when courts interpret the meaning of provisions of an insurance contract, rather than impose a rule of law on the parties for public policy reasons. See id. at 1464–65 (holding that it was questionable whether the fundamental principles governing whether a duty to defend arises under California law "reflected the court's interpretation of policy provisions, as distinguished from a rule of law imposed on the parties for public policy reasons regardless of their intentions upon entering into the insurance contract."). It is unclear whether those courts that have decided whether allegations of substandard or defective performance constitute an "occurrence" as defined in a commercial general liability policy, have interpreted the meaning of the term in a particular policy or made a public policy choice. See generally Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co., 302 F.3d 1049, 1056 (9th Cir. 2002); Group Builders, Inc. v. Admiral Ins. Co., 123 Hawaii 142, 148–49, 231 P.3d 67, 73–74 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." Frontier Oil, 153 Cal. App. 4th at 1443. Here, the policies do not explicitly specify a place of performance. Thus, the question is whether a place of performance can "be gleaned from the nature of the contract and the surrounding circumstances." Id.

The California Court of Appeal's decision in Frontier Oil, upon which both parties rely, is instructive. In that case, insureds brought an action against their liability insurer seeking a declaration that the insurer was obligated to defend them in personal injury actions arising out of the operation of an oil and gas production facility in Beverly Hills, California. Frontier Oil, 153 Cal. App. 4th at 1442. The California Court of Appeal applied section 1446 to determine the appropriate choice of law for the interpretation of the insureds' policy. Id. at 1448–1462. The court held that the policy indicated that the insurer would perform its defense obligations under the policy in California, because the policy "specifically refers to claims arising from oil and gas operations at 'Drill-Site # 1' in Beverly Hills, California." Id. at 1461. In addition, three endorsements to the policy indicated that the parties understood the policy to provide coverage for the insureds' operation in Beverly Hills, California. Id. Accordingly, the court concluded that California was the intended place of performance of the contract, and section 1646 required the application of California law. Id. at 1462.

Unlike the policy at issue in Frontier Oil, the policies in this case do not expressly provide coverage for a fixed location in Hawaii or any other state. Instead, the policies provide coverage for all property damage caused by an occurrence taking place anywhere in the United States and elsewhere. DSUF ¶ 7. Nor do any endorsements to the policies indicate that the parties contemplated that Hawaii would be the place of performance for the policies. In fact, the only state-specific endorsements to the policies relate to California. DSUF ¶ 14.

Instead, defendant argues that the policy formation documents suggest that the parties intended that any defense for potentially covered Hawaii lawsuits would be provided in Hawaii. Opp'n at 3–4. In support of its argument, defendant points to a coverage proposal accepted by plaintiff underlying the 2004-2004 policy ("2004 proposal"), naming four locations in Hawaii among a list of 58 locations where plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

did business. See Declaration of Doris Johnson ("Johnson Decl."), Exh. A at 10–13. Defendant contends that the 2004 proposal suggests that the parties contemplated that plaintiff had operations in Hawaii, and thus, when it was sued in Hawaii over a claim arising out of those operations, if the claim was potentially covered, any defense would be furnished in Hawaii. Opp'n at 4. The 2004 proposal, however, hardly supports defendant's contention that the parties intended Hawaii as the place of performance of the contract. In fact, the 2004 proposal lists, in addition to the four Hawaii locations, fourteen California locations, as well as locations in a variety of other states. Johnson Decl., Exh. A at 10–13. Moreover, defendant's argument that the parties indicated as the place of performance any location where there is evidence it *could* conceivably be performed goes too far. Not only is defendant's position contrary to the plain language of the statute, which provides "the place where it is to be performed," not places, it would mean that there would be almost no situation in which a contract does not indicate a place of performance. Thus, the Court finds that the language of the policies and the endorsements and proposals underlying the policies indicate that *no* "intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." 153 Cal. App. 4th at 1443.

Because the policies do not indicate any particular place of performance, section 1446 requires that the Court apply the law of the state in which the policies were made. A contract is made in the state in which "the last act necessary to the contract, the acceptance, was performed." Ury v. Jewelers Acceptance Corp., 227 Cal. App. 2d 11, 16 (1964). Here, although the policies were issued by defendant, a New York corporation, they were delivered to and accepted by plaintiff in California. See Johnson Decl. ¶¶ 3–10. Therefore, the contract was made in California. Accordingly, under California Civil Code section 1646, the law of California governs the interpretation of the policies.

    **2.    Governmental Interest Analysis**

Pursuant to California common law, courts resolve conflicts of laws using a multi-step "governmental interest" analysis. Offshore Rental Co. v. Continental Oil Co., 22 Cal. 3d 157, 161 (1978). The first step of the analysis is to determine whether there is a material difference between two applicable choices of law. Wa. Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 919–20 (2001). If there is no material difference, there is no choice of law problem, and the court may apply California law. Id. at 920. If,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

O

however, the court finds that there is a material difference in the laws, it must proceed to the second step of the analysis and determine what interest, if any, each state has in having its own law applied. Id. Where only one of the two states related to a case has a legitimate interest in the application of its law, there is no true conflict and the court should apply the law of the interested state. Offshore, 22 Cal. 3d at 163. If both states have a legitimate interest in the application of its law, such that a true conflict exists, the court employs an "comparative impairment" analysis "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." Denham v. Farmers Ins. Co., 213 Cal. App. 3d 1061, 1066 (1989). In undertaking the comparative impairment analysis, the court "must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws'" and "the function and purpose of those laws." Wa. Mut. Bank, 24 Cal. 4th at 920 (quoting Offshore, 22 Cal. 3d at 166). The court should also "consider[] each jurisdiction's relevant contacts with the parties, property and the incident involved in order to compare the genuine interest of each jurisdiction in having its laws applied." Sierra–Bay Fed. Land Bank Ass'n v. Superior Court, 227 Cal. App. 3d 318, 331 (1991).

### i. Material Difference

Here, defendant's policies cover claims for liability for "bodily injury or property damage" caused by an "occurrence." This case centers on whether plaintiff's provision of substandard concrete for the Project, which caused "property damage" in the form of loss of use of the drilled shafts and the bridge, qualifies as an "occurrence" as defined by the policies. There is a material difference of law between California and Hawaii on the question of what constitutes an "occurrence" under a commercial general liability policy.

Based on the rejection of the "wooden distinction" between contract and tort-based claims, courts applying California law have concluded that the unintentional supplying of defective products constitutes an "occurrence" within the meaning of commercial general liability policies. See Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co., 302 F.3d 1049, 1056 (9th Cir. 2002). In Anthem Electronics, the insured agreed to supply a third party with circuit boards to be incorporated into scanners that the third party sold. Id. at 1052. After some of the scanners malfunctioned, it was discovered that the circuit boards supplied by the insured had latent defects due to manufacturing flaws. Id. The third party filed suit against the insured in California state court alleging causes of action for breach of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

contract and negligence, seeking to recoup sums it expended relating to the loss of use of the scanners. Id. The insured tendered the complaint to its insurers and requested defense of the suit. Id. at 1052–53. The insurers refused, arguing that the losses alleged in the third party's complaint were not covered under the insurance policies. Id. at 1053. Applying California law, the Ninth Circuit held that the complaint raised a possibility of coverage and therefore triggered the insurers' duty to defend because the unexpected failure of the circuit boards, even if the result of the insured's negligence, raised the possibility of an "occurrence" within the meaning of the policies. Id. at 1055–56. In so holding, the court stated:

> [The insurers] argue against an occurrence where, as here, a supplier simply breaches a contract and supplies defective goods. But this argument seeks to revive a wooden distinction recently rejected by the California Supreme Court between contractual claims and insurance claims. See Vandenberg v. Superior Court, 21 Cal. 4th 815, 840, 88 Cal. Rptr.2d 366, 982 P.2d 229 (1999) (holding that courts must focus on the nature of the risk and the injury, in light of policy provisions, to determine coverage-not on whether the insured breached a contract). So long as [the insured] can show that the circuit boards failed unexpectedly and caused covered property damage, it is well on its way to a prima facie case even though a breach of contract may be involved.

Id. at 256.

Hawaii law, by contrast, "has not rejected the distinction between contract and tort-based claims." Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 951 (9th Cir. 2004). Thus, "breach of contract claims based on allegations of shoddy performance" and "tort-based claims, derivative of these breach of contract claims" are not a covered "occurrence" within the meaning of commercial general liability policies under Hawaii law. Group Builders, Inc. v. Admiral Ins. Co., 123 Hawaii 142, 148–49, 231 P.3d 67, 73–74 (2010). In Group Builders, the insured subcontracted with a hotel chain to install building insulation and framing on a hotel tower. Id. at 143. Shortly after construction on the tower was completed, mold growth was discovered in the guest rooms and certain rooms were closed for a period of time for remediation. Id. at 144. The hotel chain filed suit against the insured for construction defects and closure of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

O

tower, alleging claims for, *inter alia*, breach of contract and negligence. Id. After receiving notice of the lawsuit, the insurer refused to defend or indemnify the insured for the claims asserted in the hotel chain's lawsuit. Id. The Hawaii Intermediate Court of Appeals held that the allegations of faulty construction work, giving rise to a breach of contract claim, did not constitute an "occurrence" under the commercial general liability policy. Id. at 148. Additionally, the court concluded that tort-based claims, derivative of breach of contract claims, are also not covered under the policy. Id. at 148–49; see also Burlington Insurance, 383 F.3d at 948 (under Hawaii law, claim for negligent breach of contract based on allegations of improper design and construction of residence do not constitute an "occurrence" within coverage of commercial general liability policy).[2]

Therefore, there is a material difference of law between California and Hawaii with respect to what constitutes an "occurrence" under commercial general liability policies.

### ii. The States' Interests and Comparative Impairment

Having found that there is a material difference in the laws of California and Hawaii, the Court must determine what interest, if any, each state has in having its own law applied. Wa. Mut. Bank, 24 Cal. 4th at 919–20. If both Hawaii and California have a legitimate interest in the application of its law, the Court must undertake the comparative impairment analysis. Id. at 920.

California's interests are twofold. First, because plaintiff, the insured, is a California resident, California has an interest in protecting it from the unfair practices of

---

[2] Recently, the Legislature of the State of Hawaii passed HB 924. Pl.'s Request for Continuation, Exh. A. That statute provides, in relevant part: "For purposes of a liability insurance policy that covers occurrences of damages or injury during the policy period and that insures a construction professional for liability arising from construction-related work, the meaning of the term 'occurrence' shall be construed in accordance with the law as it existed at the time that the insurance policy was issued." Id. at 6–7. Plaintiff argues that if HB 924 goes into effect, it will effectively overrule retrospectively Group Builders. See Pl.'s Request for Continuation at 1–2. In light of the Court's ruling herein, it declines to address this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

insurers. See Denham v. Farmers Ins. Co., 213 Cal. App. 3d 1061, 1066 (1989) ("California therefore has an interest in protecting [its residents] from the unfair practices of insurers."); Zimmerman v. Allstate Ins. Co., 179 Cal. App. 3d 840, 846 (1986) ("California has demonstrated an interest in . . . affording redress to California residents damaged by unfair practices of insurers"). Second, because the policies were formed in California, the State has an interest in applying its law to interpretation of the policies. See Robert McMullan & Son, Inc. v. U.S. Fid. & Guar. Co., 103 Cal. App. 3d 198, 205 (1980) ("Since the contract was made between a California resident and a corporation doing business in California, California has an interest in seeing that such contract is enforced according to the law where it was made."); Jones v. St. Paul Travelers, 496 F. Supp. 2d 1079, 1084 (N.D. Cal. 2007) ("California has a strong interest in applying its laws because California has an interest in . . . regulating the conduct of insurers operating within the state.").

Although this action is an insurance coverage dispute involving policies formed in California before any of the underlying events occurred, Hawaii, as the site of the underlying loss and the Brown action, has a sufficient interest in the outcome of this litigation to satisfy the "legitimate interest" standard. See, e.g., Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1201 (S.D. Cal. 2007) ("As the site of the underlying loss and [third party] litigation, Pennsylvania has a sufficient interest in the outcome of the case to satisfy [the 'legitimate interest'] element of the choice-of-law test."). Nevertheless, Hawaii's interest in the dispute is attenuated, and it would be substantially unimpaired by the application of California law. Defendant asserts that because the underlying incidents occurred in Hawaii, that state has an interest in applying its law to this dispute. Opp'n at 5. Hawaii's interpretation of an "occurrence" within the meaning of a commercial general liability policy is intended to protect the expectation of the insurer, but defendant is a New York company. Thus, no Hawaii insurance company is impaired by the application of California law in this case. See Jones, 496 F. Supp. 2d at 1084 (holding that California would be impaired by application of Georgia law where, in part, the insurer was not a Georgia company).[3]

---

[3] Defendant also argues that the rule adopted in Hawaii, as set forth in Group Builders, is the better public policy. Opp'n at 7–9. Defendant's argument misconstrues the comparative interest analysis. Contrary to defendant's suggestion, the comparative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

Defendant argues that the Court of Appeal's decision in <u>Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.</u>, 14 Cal. App. 4th 637 (1993) requires application of Hawaii law because the underlying claimed liability arose from conduct in Hawaii. Opp'n at 5–7. In <u>Stonewall</u>, a Wisconsin based battery manufacturer argued that Wisconsin law applied in a personal injury action brought by a plaintiff injured in California due to an exploding car battery manufactured in California. <u>Id.</u> at 640. In measuring the states' interests, the court held that "[w]here a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved." <u>Id.</u> at 646–47 (quoting Restatement (Second) of Conflict of Laws § 193, comment f). Significantly, the policy at issue in <u>Stonewall</u> contained individual amendatory endorsements for eleven different states. <u>Id.</u> at 647–48. Consequently, the court determined that at the time the policies were issued both the insurer and the insured "carefully considered the complexity of the corporation's activities," and "would reasonably expect . . . that the corporation's liability to a third party might be governed" by the state where the cause of liability occurred. <u>Id.</u> at 648. Based on its analysis, the court determined that "in reality" the Wisconsin corporation "obtained separate policies which insure separate risks located in any number of states where the corporation does business." <u>Id.</u> In reaching its conclusion, however, the court cautioned that the multiple risk approach is not appropriate in all cases where an insured's activities expose it to liability in a variety of states, and that in many circumstances the policy makes clear that the parties do not expect the insured's rights to be controlled by the location of the insured event. <u>Id.</u> at 468 n.7 (citing Restatement (Second) of Conflict of Laws § 193, comment b).

Despite the fact that the policies issued by defendant indisputably cover risks in multiple states, here, the record does not reflect that the parties viewed the policies as separate policies covering separate risks in a multitude of states. Although the 2004 proposal lists Hawaii among the locations where plaintiff has operations, unlike

---

interest analysis "does not involve the court in 'weighing' the conflicting governmental interests in the sense of determining which conflicting law manifest(s) the 'better' or the 'worthier' social policy on the specific issue." <u>Offshore</u>, 22 Cal. 3d at 165 (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

Stonewall, the only amendatory endorsement the policies include was accepted in California and applies to the policy as a whole, and there is no evidence that while negotiating the terms of the policies the parties considered the complexity of plaintiff's activities to the same extent as in Stonewall. See Jones 496 F. Supp. 2d at 1084–85 (distinguishing Stonewall on similar grounds); Costco, 472 F. Supp. 2d at 1206 (holding Stonewall inapplicable because, among other reasons, policy only contained one state amendatory endorsement); see also Columbia Cas. Co. v. Gordon Trucking, Inc., 758 F. Supp. 2d 909, 921–22 (N.D. Cal. 2010) (even though accident giving rise to underlying liability occurred in California, Stonewall did not mandate application of California law where insurance policy was delivered to Washington brokerage firm, bore stamp required by Washington law, incorporated underlying policy that contained Washington coverage forms, and insured Washington corporation). Accordingly, there is no basis for the Court to conclude that the parties reasonably expected the policies to be governed by Hawaii law, as the place of the insured risk at issue.

Furthermore, in Stonewall, the court made an explicit finding that the California rule at issue was intended to protect California residents from tortfeasors and, therefore, California's specific interest as the place of the insured risk would be impaired by the failure to apply its law. 14 Cal. App. 4th at 69. No comparable finding can be made in this case. The public policy underlying Hawaii's rule that contract-based construction defect claims do not constitute an "occurrence" under commercial general liability policies is that a contrary rule converts the policy into a professional liability performance bond.[4] See Group Builders, 231 P.3d at 72. Thus, this rule is intended to

---

[4] To the extent this rule is justified by Hawaii's desire to not incentivize "willful and wanton breach[es] of contract," defendant has not presented any evidence that such an interest is implicated in this case. See WDC Venture v. Hartford Acc. & Indem. Co., 938 F. Supp. 671, 678 (D. Haw. 1996) ("to allow [policy] coverage for willful and wanton breach of contract claims would render the contract meaningless. A breach of contract is an uninsurable activity, as to hold otherwise would invite such misbehavior."). The Brown Complaint does not specifically allege, and defendant has not presented any evidence that plaintiff's conduct giving raise to the Brown action was "willful and wanton" or intentional.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

protect the expectation of insurers. Because no Hawaiian insurer is involved in this dispute, Hawaii's interest will not be impaired by the application of California law.

Accordingly, the Court finds that applying California law to this action will not substantially impair Hawaii's interests.

### iii.   Summary

In sum, the 'governmental interest' analysis requires the application of California law. Although there is a material difference between California and Hawaii law on what constitutes an "occurrence" under commercial general liability policies, and each state has a legitimate interest in having its own law applied, the application of California law will not substantially impair Hawaii's interests.

### B.   Application of California Law to the Policies

Having found that both California Civil Code section 1646 and the "governmental interest" analysis require the application of California law to the present dispute, the remaining question is whether defendant owes plaintiff a duty to defend the Brown action. Under California law, the duty to defend is broader than the duty to indemnify, and "is so broad that as long as the complaint contains language creating the *potential of liability* under an insurance policy, the insurer must defend an action against its insured. . . ." CNA Cas. of Cal. v. Seaboard Sur. Co., 176 Cal. App. 3d 598, 606 (1986) (emphasis added); see also Buss v. Superior Court, 16 Cal. 4th 35, 46 (1997) ("Obviously, the insurer's duty to defend is broader than its duty to indemnify[:] . . . [i]t extends beyond claims that are actually covered to those that are merely potentially so."). "The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). The insurer is relieved of its duty to defend only if the complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276 n.15 (1966). However, facts extrinsic to the complaint may give rise to a duty to defend "when they reveal a possibility that the claim may be covered by the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993). If the allegations in the complaint and the extrinsic facts known to the insurer demonstrate no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

potential for coverage, the insurer may deny the defense. Gunderson v. Fire Ins. Exch., 37 Cal. App. 4th 1106, 1113–14 (1995). If, at the time of tender, the insured possesses extrinsic evidence suggesting that the insurer has a duty to defend, it is the insured's obligation to bring to the insurer's attention that evidence. Id. at 1117–18.

Here, the allegations in the Brown Complaint raise the potential for coverage under the policies, thereby triggering defendant's duty to defend. The policies provide coverage for liability arising from "bodily injury or property damage," including loss of use of property, caused by an "occurrence" that takes place in the "coverage territory." Under California law, Brown's allegation that the concrete supplied by plaintiff was substandard constitutes an "occurrence" under the policies. As discussed *supra*, under California law, the unintentional supplying of defective products constitutes an "occurrence" within the meaning of commercial general liability policies. See Anthem Electronics, 302 F.3d at 1056. While the Brown Complaint does not specifically allege that plaintiff supplied the faulty concrete unintentionally, neither does it allege that it did so intentionally. Accordingly, the complaint raises the possibility that plaintiff unintentionally supplied the defective concrete causing the damage.

In addition, Brown's allegations raise the possibility that plaintiff's conduct caused "property damage" within the meaning of the policies. The Brown Complaint alleges that plaintiff's supplying of defective concrete caused the drill shafts to fail, resulting in project delays, and Brown seeks consequential damages. PSUF ¶¶ 21–22. These allegations assert "property damages" in the form of loss of use of property. See Anthem Electronics, 302 F.3d at 1058 (allegations in underlying complaint that defective circuit boards failed after they were installed in scanners, causing customers loss of use of the scanners, sufficiently asserted "loss of use" property damage within meaning of California commercial general liability policies). Finally, the allegations in the Brown Complaint that plaintiff supplied the defective concrete in Hawaii for drill shafts constructed in 2005, unquestionably raise the possibility that plaintiff's conduct occurred in the "coverage territory" during the period covered by the policies.

Accordingly, the Court concludes that the allegations in the Brown Complaint create the potential of liability under the policies, thereby triggering defendant's duty to defend plaintiff in the Brown action. See Seabord Sur. Co., 176 Cal. App. 3d at 606.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1601 CAS (AGRx) | Date | June 6, 2011 |
|---|---|---|---|
| Title | AMERON INTERNATIONAL CORPORATION v. AMERICAN HOME ASSURANCE COMPANY; ET AL. | | |

## V.   CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS plaintiff's motion for partial summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 09 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |